

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

0-5167

Dear Sir:

Opinion No. 0-5167
Re: Married woman with disabilities of coverture removed and declared a feme sole under Article 4626, V. A. C. S., may go into retail liquor business on her separate money and property and may obtain package store permit to operate as many as five (5) retail liquor stores and related matter.

Your request for opinion has been received and carefully considered by this department. We quote from your request as follows:

"It is probable that applications for liquor package store permits will be submitted to this office, which will involve the question of eligibility of a wife whose husband is already the holder of the maximum number of permits allowed him under the statutes.

"Section (2) of Section 17, Article I of the Texas Liquor Control Act provides as follows:

"'It shall be unlawful for any person to hold or have an interest in more than five (5) package stores or the business thereof. It shall further be unlawful for any person to hold or have an interest in more than five (5) package store permits.'

"In order that we may pass upon this question, it would be appreciated if you would furnish us

your opinion in response to the following questions:

"1. Can married women who have had their disabilities of coverture removed and be declared feme soles under Article 4626 of the Revised Statutes of Texas, go into the retail liquor business with their own money and obtain licenses to operate retail liquor stores up to five?

"2. Would it make any difference if their disabilities of coverture were removed and they were made feme soles for business purposes, using their own money, if their husbands were also in the retail liquor business and had five permits?

". . . ."

Article 4626, Vernon's Annotated Texas Civil Statutes, reads as follows:

"Any married woman, with the consent of and joined by her husband, may apply by written petition addressed to the district court of the county in which she may desire to transact business for judgment or orders of the said court removing her disabilities of coverture and declaring her feme sole for mercantile and trading purposes; such petition shall set out the causes which make it to the advantage of said married woman to be so declared feme sole, and shall be filed and docketed as in other cases, and at any time thereafter the district court may, in term time, take up and hear said petition and evidence in regard thereto. If upon a hearing of said petition and evidence relating thereto, it appears to the court that it would be to the advantage of the woman applying, then said court shall enter its decree declaring said married woman feme sole for mercantile or trading purposes, and thereafter she may, in her own name, contract and be contracted with, sue and be sued, and all of her separate property not exempt from execution under the laws of Texas shall thereafter be subject to her debts and liable under execution therefor, and her contracts and obligations shall be binding on her. Acts 1911, p. 92; Acts 1937, 45th Leg., p. 1343, ch. 459, § 2."

Opinion No. O-1640 of this department, written by Honorable Grover Sellers, Assistant Attorney General, (now First Assistant Attorney General), holds that the Texas Liquor Control Board can not legally deny a married woman a permit to retail wine and beer on the sole ground that her husband had been convicted of a felony and would profit from her business under community property laws. We quote from opinion No. O-1640 as follows:

"The sole question propounded by you for our consideration, as we understand it, is whether a married woman may be denied a permit to retail wine and beer when her husband, who is disqualified from receiving such a permit would benefit thereby, under the community-property law of this State.

"It seems settled law that a married woman may enter into the mercantile business at her will. 23 T. J. p. 304 § 266, from which we quote:

"'Technically, a married woman may be a merchant or trader at will, so far as the immediate transaction of the business is concerned. That is, she may own merchandise and wares freely, may buy or sell them at pleasure either for cash or on credit, may rent or lease buildings or employ clerks and other help needed. . . .'

"If the wife independently of her husband should go into the wine and beer business he would not in any way be liable for her debts. This was held in the case of J. B. Hirshfeld & Co. v. Evans et ux, 56 S. W. (2) 683, wherein the court said:

"'The pleading fails to show any consideration for the subsequent promise made by the husband, Henry Evans, to pay for goods previously sold to his wife and for which she was not responsible. So far as the pleadings show, it was a verbal promise and is further void under the provisions of the statute of frauds.'

"This case reached the Supreme Court and was affirmed, 93 S. W. (2) 143.

"It is true in the ordinary case, where the
wife goes into business for herself, the profits
from the business, if any, would by force of law
become the community property of the wife and her
husband. 23 T. J. § 266.

"From the foregoing authorities it must be
held that the husband has no interest whatever in
the wife's business. It follows that if the hus-
band should be benefitted from a permit issued to
the wife, it would not be by virtue of any permit
in which he was interested but solely because of
the profits of the business covered by the permit
issued to the wife alone, and in which he was not
at all interested. The husband's rights come to
him not from any interest which he has in the wife's
business, but solely as a matter of law, which makes
the profits community property.

"Neither do we agree, under the facts submit-
ted, that the profits derived from the wife's busi-
ness would necessarily be community property.
Clearly, the husband would not be entitled to a
permit to enter this business, for the reason that
the law does not allow one guilty of his conduct
to receive such a permit. Where the law denies
a husband the right to go into a business, or pro-
fit therefrom, because of his conduct, and the
wife enters such business, it would seem that the
profits would be her separate property.

"We think both the foregoing conclusions are
fully supported by the celebrated case of Dickson
v. Strickland, 265 S. W. 1012, in which the Supreme
Court overruled the contention that Mrs. Mirian A.
Ferguson could not qualify as Governor because of
her husband's impeachment:

"'The fifth question inquires whether Mrs.
Ferguson was rendered ineligible by the decree of
the Senate of Texas, sitting as a court of impeach-
ment, removing her husband, James E. Ferguson, from
the office of Governor and adjudging that he be
henceforth disqualified to hold any office of power,
trust, or profit under the state.

"'Appellant's position is that the emoluments of the office of Governor are community property, and that James E. Ferguson could not receive his community half of his wife's salary as Governor without violating the decree of impeachment.

"'It is unnecessary to inquire into the exact status of the wife's salary from public office as separate or community property, under our present Constitution and statutes. For, if it be assumed that Mrs. Ferguson's salary as Governor would belong to the community estate of her husband and herself, still James E. Ferguson would not be receiving or sharing any emolument or profit derived from any office held by James E. Ferguson under the state. The emolument would be derived from Miriam A. Ferguson holding an office and performing its duties. Such a disqualification as is here insisted on could be supported on no other theory than that of legal identity of husband and wife, and that theory we definitely repudiate, as it has been uniformly rejected from the earliest cases determined by this court.

"'The Constitution forbids the imposition of penalties on members of the family of an impeached Governor by declaring that the Senate's judgment of impeachment shall extend, in addition to punishment after indictment and trial, only to removal from office and disqualification to hold office under the state.

"'There is a third reason why no supposed community interest of James E. Ferguson in the salary of an office held by his wife should render his wife ineligible to hold such office. And that is, if by his wrong he had deprived himself of any right to share such salary, the same would become his wife's separate estate. Wright v. Hays, 10 Tex. 136, 60 Am. Dec. 200; Nickerson v. Nickerson, 65 Tex. 281.'

"Upon the foregoing authorities you are advised that it is the opinion of this department that the

Honorable Bert Ford, Administrator, Page 6

Board would not be authorized to deny the permit, under the facts related by you."

In view of the above and foregoing authorities we answer your first question in the affirmative and your second question in the negative.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Wm. J. Fanning
Assistant

WJF:np

